U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

OCT 2 6 2009

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ANDRE PICKETT<br>    Petitioner<br><br>VERSUS<br><br>LYNN COOPER, WARDEN<br>AVOYELLES CORRECTIONAL<br>CENTER<br>    Respondent | CIVIL ACTION<br>SECTION "P"<br>NO. 07-cv-2239<br><br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by pro se petitioner, Andre Pickett ("Pickett"), on December 27, 2007 (Doc. Item 1), and amended on March 17, 2008, May 19, 2008 and June 26, 2008 (Doc. Items 4,6,8). Pickett is attacking his conviction and sentence imposed by the Ninth Judicial District Court in Rapides Parish, Louisiana, on one count of manslaughter. Pickett received a thirty six (36) year sentence of imprisonment and is currently confined in the Avoyelles Correctional Center in Cottonport, Louisiana.

Pickett raises the following grounds for review in his habeas petition:

    1. The denial of effective assistance of counsel;

    2. The knowing use of perjured testimony by the prosecutor to gain the conviction of Pickett; and

    3. The State's failure to provide Lashonda Iles' criminal record in violation of Brady v. Maryland.

Pickett alleges he exhausted his state court remedies and the undersigned determined in a Report and Recommendation that " the petition appears to be timely; the claims appear to have been fully exhausted; and, none of the claims were dismissed as procedurally defaulted." (Doc. Item 9, p.5).

The State raised an exhaustion defense in its answer stating that while Pickett raised the issues in the state courts, the mere raising of issues was not sufficient to fully exhaust his claims. Rather, Pickett was required to "fully and fairly" present the issues to the state courts. However, the State failed to argue the merits of this defense. Not a single issue raised by Pickett was pin pointed as failing to meet the requirement of being "fully and fairly" presented.

The State is not a pro se litigant. Accordingly it is not the responsibility of the undersigned to develop its argument and decide the same. The undersigned previously found that Pickett exhausted his claims, a review of the record confirms that finding and Respondent has failed to show otherwise. Thus, Pickett's claims are exhausted.

### Statement of the Case

Pickett was indicted and charged with second degree murder by the Rapides Parish Grand Jury. On advice of counsel, Pickett waived trial by jury and proceeded to a bench trial. On March 12, 2003, Pickett was found guilty of the lesser included offense of

manslaughter. On March 18, 2003, he was sentenced to serve thirty-six years at hard labor.

Appellate counsel was appointed and Pickett appealed his conviction and sentence to the Third Circuit Court of Appeal ("Third Circuit") arguing three assignments of error: (1) insufficiency of the evidence; (2) the trial court erred in failing to grant a motion to suppress identification; and, (3) the trial court erred in failing to rule on defendant's motion to reconsider sentence. (R 422-437).

On October 1, 2003, the Third Circuit, in an unpublished opinion, affirmed Pickett's conviction and remanded the matter for ruling on the motion to reconsider sentence. (R. 406-421; see also, State of Louisiana v. Andre Jermaine Pickett, 2003-00683 (La. App. 3 Cir. 10/1/2003), 855 So.2d 441 (Table)).

On December 1, 2003, Pickett applied to the Louisiana Supreme Court for a writ of *certiorari*. (R. 488-505). On December 17, 2004 the writ was denied. (R. 487; see also, State ex rel. Andre Jermaine Pickett v. State of Louisiana, 2003-3244 (La. 12/17/2004), 888 So.2d 852). Pickett apparently did not seek further direct review in the United States District Court.

Pickett, then filed an Application for Post-Conviction Relief in the Ninth Judicial District Court on May 3, 2005 (R. 162-173). On October 5, 2006, the trial court denied his application for post-conviction relief and provided written reasons for judgment.

(R. 150-153). Pickett sought review in the Third Circuit (R. 387-394), but his writ application was denied on January 29, 2007. State of Louisiana v. Andre Jermaine Pickett, No. KH 06-1380. (R. 386).[1]

On March 6, 2007, Pickett filed an application for writs in the Louisiana Supreme Court. (R. 476-485). On November 21, 2007, his writ application was denied. (R. 454; see also, State of Louisiana ex rel. Andre J. Pickett v. State of Louisiana, 2007-0452 (La. 11/21/2007), 967 So.2d 534).

Pickett signed his federal petition for writ of habeas corpus on December 18, 2007 which this court received and received and filed on December 27, 2007 (Doc. Item 1). It is this petition which is currently before me for Report and Recommendation.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the Petitioner, and the State court records provide the

---

[1] The Third Circuit noted, "Relator failed to prove that Detective Howard gave false testimony at trial, that defense counsel was ineffective and that Ms. Iles has a pending charge of issuing worthless checks at the time she testified at his trial or that she entered into a deal with the State in exchange for her testimony. La. Code Crim. P. art. 930.2. Relator failed to reference the issue to be resolved with he started the trial court erred when it ruled that Ms. Iles' involvement in the case was addressed by this court. Accordingly, the assignment of error was not considered. Uniform Rules-Courts of Appeal, Rule 2-12.4. As the trial court found Relator's claims were not sufficient to afford relief, it properly dismissed Relator's application without holding an evidentiary hearing. La. Code Crim. P. art 930." [See, rec. doc. 1-4, p. 47]

required and adequate factual basis necessary for the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 323-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d. 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or the laws or treatises of the United States. 28 U.S.C. §2254(a).

Under AEDPA, which is applicable to habeas petitions filed after its effective date of April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State Court proceeding unless the adjudication of the claim (1) resulted in a decision that was "contrary to", or involved an "unreasonable application of", clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an "unreasonable determination" of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194, 151 L.Ed.2d 136 (2001), and cases cited therein.

5

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. Id.

## Law and Analysis

### Ground 1 - Ineffective Assistance of Counsel

Pickett argues he was denied effective assistance of counsel because his trial counsel failed to: (1) expose inconsistencies in statements made by the State's witness, Lashonda Iles ("Iles"); (2) timely file pretrial discovery motions for discovery of impeachment material, police incident reports, crime scene technician reports and witness statements; and (3) conduct a thorough investigation.

6

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Moreover, he must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The Petitioner must show that his counsel's performance was (1) deficient (Id. at 688, 104 S.Ct. at 2065) and (2) the deficient performance prejudiced his defense. Id. at 694, 104 S.Ct. at 2068. Petitioner must prove counsel's performance "fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. at 2065.

Counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. Nelson, 989 F.2d at 850, citing Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. Bare allegations do not suffice. A particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments. Jones v. Page, 76 F.3d 831, 842 (7th Cir. 1996), cert. den., 519 U.S. 951, 117 S.Ct. 363, 136 L.Ed.2d 254 (1996), citing Strickland, 466 U.S. at 691, 104 S.Ct.

at 2066 (1984). The central purpose of counsel is to ensure that the defendant was accorded due process, not to grade counsel's performance. Bouchillon v. Collins, 907 F.2d 589, 595 (5th Cir. 1990), citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069 (1984).

A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001), citing Strickland, 466 U.S. at 689, 104 S.Ct. at 1066 (1984). The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second guessing. Dowthitt, 230 F.3d at 743, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999).

8

Though Pickett sets forth a list of information he contends counsel should have sought through pretrial discovery motions, his argument is focused on counsel's failure to obtain evidence which would show Iles' testimony was false and/or which could be used as impeachment evidence against her. A review of the record reveals that counsel did in fact file various pretrial discovery motions. Specifically, counsel filed motions for a bill of particulars, exculpatory evidence, discovery and inspection, production of video tape, toxicology test results, 911 tapes, and rap sheets (R. 10-15; 18-20; 22-24; 29-30; 32-33; 35-36; 39-40). Additionally, as is customary in criminal cases, the parties entered into a joint stipulation in which counsel acknowledged receipt of discovery. As a result, counsel advised the court that the discovery obtained through this informal discovery procedure satisfied the requests set forth in his discovery motions. (R. 28).

Pickett also argues that the failure to timely file pretrial discovery motions resulted in his inability to conduct a thorough investigation. There is no indication that the motions were not filed timely and/or that the material was not obtained in an equally as timely fashion. In fact, the record indicates that the aforementioned motions and joint stipulation were filed and/or entered into in at least six months before trial.

Pickett also claims that a thorough investigation would have revealed other witnesses to the shooting; yet, he does not name a

single witness who his counsel should have found via the police report or investigation. What a review of the trial transcript does reveal is that trial counsel did in fact conduct an investigation into the events and even sought a continuance in order to complete the investigation. (R. 67-68). Further, counsel advised the court that he spent quite a bit of time trying to locate witnesses which Pickett named by nickname. (R. 196). However, the information provided by Pickett (who was incarcerated at the time) was vague and did not easily lead to the location or actual names of the witnesses. Furthermore, Detective Howard, who was a witness for the state, advised during his testimony that the people in the neighborhood where the shooting occurred were not willing to become involved in the investigation. (R. 236).

Pickett has not proven his counsel's representation deficient, and even if he had, he was not prejudiced because the outcome of the case would have remained the same. Pickett complains that the testimony provided by Iles was inconsistent with the facts but any alleged inconsistencies did not bear upon the primary facts of the case. Additionally, the State's other witnesses provided corroborating testimony which placed Pickett at the scene and as the shooter.

Because Pickett has not carried his burden of proof, this ground for habeas relief is meritless.

Ground 2 - Prosecutorial Misconduct

Pickett also contends that the prosecutor intentionally introduced false testimony of Detective Ronney Howard during trial in order to ensure a conviction. Specifically, he argues that Detective Howard committed perjury when he stated he received information from another witness before speaking to Pickett. Pickett argues that this is contradictory to Detective Howard's statement that he took a statement from this same witness months after speaking to Pickett.

To prove a claim for prosecutorial misconduct, Petitioner must show that the conduct complained of so infected the trial with unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). No such showing has or can be made.

While Pickett would have this court believe that Detective Howard did not and could not have spoken to the witness, Lashonda Iles, both before and after he spoke to Pickett, the facts set forth in Pickett's own complaint indicate that this did in fact occur.

> An individual called police and stated she wished to meet them at a service station located at Enterprise and [H]ighway 1. The caller indicated that she did not want to get involved, but wanted to tell police that Mr. Pickett did the shooting. (Tr. P. 40). **Based on this information**, police located Mr. Pickett and requested him to come to the detective office for quest[ion]ing.

(Doc. Item 1-3, p. 7). Emphasis added.

11

These very facts were taken by Pickett from Detective Howard's testimony at trial (R. 228). The fact Detective Howard spoke to Iles both before and after speaking to Pickett is further corroborated by the fact she did not want to get involved in the case or give a statement but that she would talk to him (R. 235).

Regardless, even if we assume the testimony was perjured, Pickett has offered no evidence to show the prosecutor knew the testimony was false. Nor has Pickett shown that the alleged perjured testimony infected the trial with unfairness as to make the resulting conviction a denial of due process. The crux of Detective Howard's testimony was that he investigated the matter and spoke to both Phillips and Iles to obtain information which led him to Pickett. None of this testimony hinged upon whether he spoke to Iles before, during or after his initial meeting with Pickett. Therefore, while it is not believed the Detective Howard perjured himself, there is certainly no proof that this alleged perjured testimony resulted in the conviction.

Ground 3 - Brady v. Maryland

Pickett's final issue is that the Respondent failed to disclose impeachment evidence pertaining to Iles. Specifically, he contends that a criminal record would reveal that Iles entered into a plea agreement, with respect to charges for issuing worthless checks, in exchange for her testimony at trial.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07,

12

10 L.Ed.2d 215 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different. Wilson, 28 F.3d at 434, citing Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Spence v. Johnson, 80 F.3d 989, 994 (5th Cir. 1196), cert. den., 529 U.S. 1012, 117 S.Ct. 519 (1996), citing Bagley, 413 U.S. at 682, 105 S.Ct. at 3383. The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. Wilson, 28 F.3d at 439. The prosecutor is not required to deliver his entire file, but only to disclose evidence favorable to the accused that, if suppressed,

would deprive the defendant of a fair trial. Wilson, 28 F.3d at 435.

When evaluating a claim of impeachment evidence withheld in violation of Brady, the court must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony. U.S. v. Weintraub, 871 F.2d 1257, 1262 (5th Cir. 1989). When the reliability of a given witness may well be determinative of guilt of innocence, nondisclosure of evidence affecting credibility falls with the general rule that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. Giglio v. U.S., 405 U.S. 150, 153-154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L. Ed.2d 1217 (1959). However, when the undisclosed evidence is merely cumulative of other evidence, no Brady violation occurs. Spence, 80 F.3d at 995.

Again, the burden of proof is on Pickett to prove there was evidence which was suppressed, favorable to him and material. All Pickett provided in this case is an allegation that a plea was entered into and that such plea was never disclosed. Out of an abundance of caution, the undersigned issued a Show Cause Order demanding Respondent provide a copy of Iles' criminal history.

The evidence provided by the Respondent showed that Iles was

14

arrested and charged with issuing worthless checks in August of 2002. (Doc. Item 22). Respondent acknowledges the charge was pending at the time of Pickett's trial in March of 2003. However, the affidavits of Assistant District Attorneys Roger Breedlove and Harold VanDyke III, make clear that no plea deal was entered in exchange for Iles' testimony. As set forth in the affidavits, it is the general policy of the Office of the District Attorney for the Ninth Judicial District to enter a nolle prosequi, rather than proceed to conviction, if the checks and other charges are paid. Accordingly, on February 17, 2005 (nearly two years after Pickett's trial) a nolle prosequi was entered on the records as Breedlove confirmed Iles paid all amounts owed as a result of the issuance of the worthless check(s). Both Breedlove and Van Dyke swore under oath that neither one nor anyone acting on their behalf ever offered Iles anything in exchange for her testimony against Pickett whether on the worthless check charge or any other. Further, VanDyke, who was the prosecutor in the Pickett trial swore he never asked Breedlove to enter a nolle prosequi on Iles' worthless check charge.[2]

---

[2] The only charge to which Pickett refers in his brief is the worthless check charge. Therefore, there is certainly no evidence presented by petitioner that a plea deal was made on any other charge(s). However, we note, to dispel any potential argument by Picket, that an April 2002 charge for resisting an officer and entry on or remaining after having been forbidden were dismissed on October 28, 2003. However, the Assistant District Attorney who dismissed the charges, Thomas Searcy, swore in his affidavit that he determined the charges could not be proven so he dismissed the case. He further swore that the dismissal was not in connection with any sort of plea

There is no evidence, other than Pickett's statement, that Iles entered into a plea agreement regarding those charges in exchange for her testimony. The Respondent did in fact provide impeachment evidence pertaining to the other eyewitness, Phillips, and that evidence was used during trial by Pickett's attorney. However, the testimony of both Phillips and Iles was that Pickett was the shooter on the night of April 22, 2002 and was identified by both of the witnesses as the person who shot and killed Johnny Ray Roberts. Therefore, Iles' testimony was cumulative and even if a Brady violation occurred, there is no indication that the outcome of the trial would have been any different. Accordingly, this claim also lacks merit.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Pickett's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections with **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

---

deal in connection with the trial of Andre Pickett. (Doc. Item 23).

16

Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of October, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

17